**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

JERRY WAYNE WILLIS, JR.,

Plaintiff,

v.

PEYTON BATASTINI,
DAKOTA COLLINS,
DELANTE ODOM, and
COLUMBUS, GEORGIA,

Defendants.

Civil Action No.
4:25-cv-167 (CDL)

**PLAINTIFF'S RENEWED STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT
ON LIABILITY**

Plaintiff Jerry Wayne Willis, Jr., pursuant to Fed. R. Civ. P. 56(c) and Local Rule 56, submits the following Renewed Statement of Undisputed Material Facts in support of Plaintiff's Renewed Motion for Summary Judgment on Liability:

Video exhibit labels: the lodged video exhibits use the media labels from Plaintiff's prior notice and declaration: Ex. B — Collins BWC (8/28/2024); Ex. C-1 — Batastini BWC (Residence → Hospital, Part 1; redacted; stops mid-hospital); Ex. C-2 — Batastini BWC (Hospital, Part 2); Ex. G — Batastini In-Car BWC; and Ex. I — Odom BWC (Hospital).

**1. On August 28, 2024, CAD created Incident Number LPD24082800000359 as Incident Type Code 8760, described as "INVESTIGATE A BUILDING/PREMISE/AREA," at 2925 Rose Avenue, Columbus, Georgia. Ex. A, pp. 1, 7.**

**2. The CAD event history reflects ANI/ALI received at 18:19:00, phone pickup at 18:19:58, incident creation at 18:20:52, first unit dispatched at 18:36:44, and first unit arrival at 18:53:37. Ex. A, p. 7.**

**3. The CAD comments state: "UNK E911 // NO ANSWER ON CB." Ex. A, p. 1.**

**4. The caller number shown in CAD was (706) 341-9177. Ex. A, p. 1.**

**5. The AT&T/Cricket subscriber record for (706) 341-9177 identifies the user information as FRANASCO LOPEZ with service address 5255 Oxford Dr., Columbus, Georgia 31904. The record does not identify Plaintiff or 2925 Rose Avenue, and provides no handset-location data tying the call to 2925 Rose Avenue. Ex. J, p. 1.**

**6. Plaintiff's address became attached to the CAD event. Ex. A, pp. 1, 7.**

7. The produced CAD 911 Event Record does not contain an audit trail, journal, address-entry history, ALI/ANI source data, routing data, handset-location source data, or other source record showing how Plaintiff's address entered the event. Ex. A.

**8. Batastini stated on BWC that dispatch reported "an unknown nine one one phone call pinging from this address" and that dispatch got "no answer on callback from the number." Ex. C-1, 19:12:00.**

**9. Plaintiff renewed his motion to compel the audit, journal, address-entry, provenance, PSAP, ALI/ANI, routing, and related source records regarding the address predicate. Ex. F, pp. 2-4.**

**10. The Court denied Plaintiff's renewed motion to compel. Ex. H.**

11. The produced CAD 911 Event Record identifies no caller by name, no victim, no report of injury, no report of violence, no report of screams, no report of forced entry, and no confirmation that any person was inside Plaintiff's residence. Ex. A, p. 1.

**12. Plaintiff testified that the main or interior door was open for his cat while the screen door remained closed. Doc. 62 at 21:21-22:10; Doc. 62 at 24:9-13.**

**13. Plaintiff testified that one could not see inside the front door. Doc. 62 at 24:18-21.**

**14. Batastini told Odom on BWC that the screen door was closed. Ex. I, 20:51:31.**

15. As Plaintiff challenged the legality of the entry, Batastini attempted to mute or stop his BWC, but the recording continued. The recording captured Batastini acknowledging there was "nothing illegal" about Plaintiff's door being open, then explaining that he announced "CPD" three times, received no answer, and thought "somebody might be laid out in there." Ex. C-1, 19:01:20.

16. Batastini and Collins entered Plaintiff's home without a warrant and before any contact with Plaintiff. Ex. C-1; Ex. B.

**17. The produced Batastini BWC does not show the officers' arrival, threshold approach, announcement, screen-door interaction, entry, initial bedroom search, or the moment the gun case first came into view. Ex. C-1.**

18. Batastini's report states: "Our department issued body cameras were operational during this investigation." Ex. D-1.

19. At the hospital, Batastini told Odom he had been recording and had everything on body cam. Ex. I, 20:58:50.

**20. Collins' BWC begins with an audible "RECORDING" prompt as Collins is already at or crossing the threshold. Ex. B.**

**21. By the time Batastini's produced BWC begins, officers had already entered and searched the residence. Ex. C-1.**

**22. Plaintiff testified that the gun case was closed and that he knew that fact because the gun case was his. Doc. 62 at 33:3-11.**

**23. Batastini asked Collins whether the items were in plain view; Collins stated he had to move the little tray out to pick the items up; Batastini then stated that they would "annotate all this." Ex. C-1, 19:21:42.**

**24. The arrest and all alleged contraband observations occurred after the threshold crossing and entry into Plaintiff's residence. Ex. B.**

25. **While Plaintiff was handcuffed in the patrol vehicle on scene, he told Batastini: "I've gotta get something to drink buddy. I was over there weeding. I'm about to pass out." Ex. C-1; Ex. G.**

26. **Batastini asked Collins for water, acknowledged that it was hot in the back of the patrol car, and allowed Plaintiff to lean out for air. Ex. C-1; Ex. G.**

27. **Plaintiff testified that Batastini gave him only a limited amount of water on scene. Doc. 62 at 36:10-14.**

28. **After the limited on-scene water event, Plaintiff told Batastini he was seriously not feeling well, felt like he was going to faint, believed he was dehydrated or overheating, needed more water, and was about to pass out. Batastini responded: "I gave you all the water I had." Ex. C-1; Ex. G.**

29. **When Plaintiff asked to be taken straight to the hospital, Batastini responded: "Well, the hospital's back the way we came." Ex. C-1; Ex. G.**

30. **At jail intake, Plaintiff asked Batastini for water. Batastini stated that he had "nowhere" to give Plaintiff water and that the facility was the Muscogee County Jail, run by sheriff's officers. Ex. C-1.**

31. **When Plaintiff stated that it was hard to breathe because he had cotton mouth, Batastini stated that "the nurses say we can't give you any until they check you out." Ex. C-1.**

32. **When Plaintiff requested an ambulance, Batastini responded: "For what?" Ex. C-1.**

33. **The jail nurse attempted to obtain Plaintiff's blood pressure and stated that she had to get his blood pressure "to take you in." Ex. C-1.**

34. **After Plaintiff again stated that he was about to pass out, Batastini asked the nurse to "entertain" him and try Plaintiff's arm again. The nurse responded, "You're going to the hospital babe," and Batastini stated, "You're gonna go to the hospital." Ex. C-1.**

35. **Batastini stated that jail medical staff had "already refused" Plaintiff "from the jail" until Plaintiff received medical clearance from the hospital, and that he could not take Plaintiff back inside the jail. Ex. C-1.**

36. **Batastini later stated: "They already refused you at that point. I can't do nothing about it." Ex. C-1.**

37. **Odom stated on BWC: "If we get an E 911 call, we enter the residence to make sure that person is okay. We go to the, we clear the residence. If there's something laying inside just plain view. It is, it's fair game, sir." Ex. I, 20:51:31.**

38. **Odom also stated on BWC: "I'm agreeing with my officers that they did the right thing." Ex. I, 20:51:31.**

Respectfully submitted this 4th day of May, 2026.
/s/ Jerry Wayne Willis, Jr.
JERRY WAYNE WILLIS, JR.
Plaintiff, pro se
2925 Rose Avenue

Columbus, Georgia 31904
(678) 458-4000
jwillis@georgiasociety.com

**Certificate of Service**

I certify that on this date I filed the foregoing via CM/ECF, which will serve all counsel of record.

/s/ Jerry Wayne Willis, Jr.
JERRY WAYNE WILLIS, JR.