IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| JERRY WAYNE WILLIS, JR., | * | |
| Plaintiff, | * | |
| vs. | * | CASE NO. 4:25-cv-167-CDL |
| CITY OF COLUMBUS, GEORGIA, et al., | * | |
| | * | |
| Defendants. | * | |

O R D E R

Jerry Wayne Willis, Jr. claims that two Columbus Police Department officers violated his constitutional rights when they responded to a 911 call that they believed originated from his home. Both Willis and the Defendants moved for summary judgment. Willis also contends he needs additional discovery to respond to Defendants' summary judgment motion. For the reasons explained below, the Court denies Willis's motions for additional discovery (ECF Nos. 74 & 80) and his summary judgment motion (ECF No. 64), and the Court grants Defendants' summary judgment motion (ECF No. 60).

FACTUAL BACKGROUND

Viewed in the light most favorable to Willis, the record reveals the following facts. On August 28, 2024, the Columbus Police Department ("CPD") received an E-911 call from an unknown caller. The 911 operator attempted to call the unknown caller

back but received no answer. CPD 911 dispatched Officers Dakota Collins and Payton Batastini to 2925 Rose Avenue in Columbus to investigate the E-911 call. Jerry Willis resides at 2925 Rose Avenue. When the officers arrived, the front door was open behind a closed, unlocked screen door. The screen door's bottom panel was gone, so there was an opening of approximately 32 x 32 inches, and a black curtain hung from the open doorway about halfway toward the floor. Pl.'s Mot. Summ. J. Ex. B, Collins Body Camera Recording at 08:39-08:43 (Aug. 28, 2024) (on file with the Court as Ex_B_Collins_BWC_2024-08-28) ("Collins BWC").[1] The officers announced their presence, and upon receiving no response entered the home without a warrant. Collins Aff. ¶ 4 ECF No. 60-3; Batastini Aff. ¶ 4 ECF No. 60-2. After entering the home, Batastini saw a white, powdered substance atop a glass table, and he believed that it was cocaine. Collins BWC at 01:35-01:51; *see also* Collins BWC at 21:15-21:36 (depicting Collins scraping the powdered substance off the glass table and bagging it as evidence). The substance was later determined to be methamphetamine. Collins

[1] The Court cites the time as minutes and seconds from the beginning of the recording, rather than the time stated in the recording's timestamp. Willis asserts that a full-length curtain hung across the interior entryway, but the evidence he cited for this assertion does not support it. *See* Pl.'s Mot. Summ. J. Ex. I, Odom Body Camera Recording at 04:09 (Aug. 28, 2024) (on file with Court as Ex_I_Odom_BWC_Hospital) ("Odom BWC") (depicting Willis speaking with officers at the hospital about where officers first encountered him). Also, the body camera footage shows a curtain that only reaches about halfway to the floor. Collins BWC at 08:39-08:43.

reported that he saw marijuana in a tray below the glass table. Willis Dep. 34:6-11 ECF No. 62; Collins BWC at 08:45-08:51; Collins Aff. ¶ 7.

Willis returned home while the officers were still there. He identified himself as the resident of the house, and Batastini arrested him. The officers placed Willis in the back of Batastini's patrol vehicle, which was running at the time. Pl.'s Mot. Summ. J. Ex. C-1, Batastini Body Camera Recording at 08:56-9:00 (Aug. 28, 2024) (on file with the Court as Ex_C-1_Batastini_BWC_Res+Hosp_Part1) ("Bastiani BWC"). While Batastini waited for Collins to finish bagging the drugs, Willis complained that he needed something to drink and that he was about to pass out. Pl.'s Mot. Summ. J. Ex. G, Bastiani Car Recording at 11:40-11:47 (Aug. 26, 2024) (on file with the court as Ex_G_Batastini_BWC_InCar) ("Car BWC"). Batastini acknowledged that it was hot in the back of the car and gave Willis a bottle of water to drink. Batastini BWC at 13:48-14:25. After several minutes, Batastini drove Willis to the jail. On the way to the jail, Willis complained loudly and repeatedly that he did not feel well, was "cotton mouthed," was "about to pass out," and "ain't gonna make it." Car BWC at 28:26-29:29, 32:11-33:00.

When they reached the jail about eight minutes later, the jail nurse tried to take Willis's blood pressure. The nurse told Willis to be still so she could get a reading, but she was unable

to get a reading due to Willis's behavior and asked Batastini to transfer Willis to the hospital for a medical evaluation. Batastini BWC at 46:25-32, 46:54-58, 48:46-49:53, 50:26-50:48. As Batastini took Willis back toward the patrol car, Willis asked to "try one more time" on a blood pressure reading at the jail instead of being taken to the hospital. *Id.* at 51:03-51:09. On the way back to the patrol car, Willis knelt on the ground for a minute and eventually sat down. *Id.* at 50:08-51:00. After remaining in that position for a short time, Willis got back up and walked to the patrol car. *Id.* at 51:23-48.

About six minutes later, Batastini parked the patrol car near the entrance to the hospital, and Willis walked into the hospital. Willis's hospital discharge report noted that he presented with "no complaints," was diagnosed with "hypertension," and was discharged with medication for his blood pressure. Def.'s Mot. For Summ. J. Ex. 5, Aug.28, 2024 Piedmont Records 1, 4 ECF No. 60-6 ("Piedmont Records"). While he was at the hospital, Willis asked to speak with a CPD supervisor. Batastini's supervisor, Delonte Odom, went to the hospital to speak with Willis. Odom told Willis that he approved of how Batastini and Collins acted, stating, "If we get an E-911 call, we enter the residence to make sure that person's okay". Odom BWC at 02:52-03:06. Willis was criminally charged based on the drugs, attended a probable cause hearing, and was bound over to the Superior Court after a finding of probable

cause. Willis Depo. 56:2-4, 65:8-66:1. The charges were ultimately dismissed.

Willis brings claims against Batastini, Collins, and Odom under 42 U.S.C. § 1983 for (I) violation of his Fourth Amendment rights (search and seizure), (II) malicious prosecution, and (III) deliberate indifference to his serious medical needs. Willis also brings (IV) a § 1983 claim against the Columbus Consolidated Government based on the alleged constitutional violations. Defendants argue that they did not violate Willis's constitutional rights and, even if they did, the officers are entitled to qualified immunity. All parties moved for summary judgment, although Willis contends that he needs more discovery to oppose Defendants' motion.

DISCUSSION

## I. Plaintiff's Discovery Motions

Willis filed two discovery motions: a motion to reopen discovery and a motion for additional discovery under Federal Rule of Civil Procedure 56(d). He seeks discovery on CPD's Automatic Number Identification-Automatic Location Identification system ("ANI/ALI") that Defendants say identified his address as the location of the E911 call. To justify modifying the scheduling order, Willis must show "good cause." Fed. R. Civ. P. 16(b). And to obtain additional discovery under Rule 56(d), Willis must demonstrate that he "cannot present facts essential to justify

[his] opposition" absent additional discovery. Fed. R. Civ. P. 56(d). In any event, the court may deny motions to reopen discovery where the parties have already conducted significant discovery and additional discovery would not resolve any dispositive, disputed evidentiary issue. *Artistic Entm't, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1203 (11th Cir. 2003).

Willis argues that good cause exists for more discovery because Defendants did not adequately respond to his discovery requests about the 911 computer assisted dispatch system or properly disclose the name of CPD's 911 supervisor during discovery. But Willis did not bring any claims based on the acts or omissions of CPD's dispatchers. Rather, all his claims are based on what happened *after* a CPD dispatcher sent Batastini and Collins to Willis's address. Critically, Willis admits that "Officers Collins and Batastini were dispatched to 2925 Rose Avenue." Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 6, ECF No. 76-1. Thus, Willis has accepted that the officers objectively believed that their investigation was required at his address, which means that the sought-after ANI/ALI discovery will not resolve any dispositive, disputed evidentiary issue. For these reasons, the Court denies Willis's motion to reopen discovery (ECF No. 80) and his Rule 56(d) motion (ECF No. 74).

## II. Defendants' Summary Judgment Motion

Defendants moved for summary judgment as to all of Willis's claims. Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

### A. Claims Against Officers Batastini and Collins

Willis claims that Batastini and Collins violated his Fourth Amendment rights by entering and searching his house without a warrant and by arresting him. He further asserts that Batastini and Collins violated his Fourteenth Amendment rights by disregarding his serious medical needs. Batastini and Collins contend that they are entitled to qualified immunity. "Qualified immunity shields government employees from suit in their individual capacities for discretionary actions" unless those actions violate clearly established law. *Brooks v. Miller*, 78

F.4th 1267, 1279-80 (11th Cir. 2023). Here, Willis does not dispute that Batastini and Collins were acting within their discretionary authority. Thus, Willis must show that the officers violated a clearly established constitutional right. *Id.* at 1280.

A plaintiff may show a given right is clearly established by (1) "case law with indistinguishable facts," (2) "a broad statement of principle within the Constitution, statute, or case law," or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *United States v. Hill*, 99 F.4th 1289, 1301 (11th Cir. 2024) (quoting *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021). If a reasonable police officer could have believed their actions were lawful based on law and facts known to them at the time of the alleged wrongdoing, qualified immunity applies. *Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000).

*1. The Warrantless Entry*

The Fourth Amendment guarantees people the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Without a warrant, "a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 573 U.S. 373, 382 (2014). It is undisputed that Batastini and Collins did not have a warrant or consent when they entered Willis's home. They contend, though, that the emergency

aid exception to the warrant requirement renders their entry reasonable under the Fourth Amendment.

Under the emergency aid exception, law enforcement officers may lawfully enter the home of another without a warrant if they have an "objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury." *Brigham City v. Stuart*, 547 U.S. 398, 400 (2006). The officer's belief is assessed by "looking at the totality of the circumstances." *Case v. Montana*, 607 U.S. 107, 118 (2026) (citations omitted). In the Eleventh Circuit, officers have qualified immunity for emergency-aid entries if it is "arguable" that the officers had "an objectively reasonable basis to conclude" that an emergency was afoot. *Marbut v. Phillips*, 176 F.4th 1256, 1265 (11th Cir. 2026).[2]

Based on the record before the court, Batastini and Collins at least had an arguable basis to conclude that their entry into the home was required. Willis attempts to frame the officers' entry as lacking any "articulable emergency facts" to justify entry. P.'s Resp. Def.'s Mot. Summ. J. 15, ECF No. 76. This version of the facts does not accurately describe the situation the investigating officers faced, even when all justifiable

[2] Although the *Marbut* court considered a seizure occurring outside the home, the standard it articulated still controls the qualified immunity analysis. *See* Marbut, 176 F.4th at 1264 ("That *Case* addressed a warrantless entry into a home instead of a seizure outside of the home does not make it any less controlling.").

inferences are made in Willis's favor. The officers were dispatched to Willis's address after a 911 hang-up call and an unanswered return call. When the officers arrived, they saw an open front door behind a tampered-with screen door, and they received no response from within. *See* Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 9 ("Admitted that Plaintiff left the interior door open for his cat and that the bottom panel of the exterior screen door had been removed."). The Court thus finds that the officers had an *arguable* basis to conclude that an emergency was occurring that justified their warrantless entry. *See Johnson v. City of Memphis*, 617 F.3d 864, 869-70 (6th Cir. 2010) ("We hold that the combination of a 911 hang call, an unanswered return call, and an open door with no response from within the residence is sufficient to satisfy the exigency requirement. [Under these circumstances,] the police were justified in entering the home to sweep for a person in need of immediate assistance under the emergency aid exception.").[3]

Willis responds that it was clearly established by 2024 that the emergency aid exception did not apply to cases like this one. He did not cite any factually similar authority to support this argument. Instead, Willis relies on two factually dissimilar

[3] Although the Eleventh Circuit has not addressed whether an officer may enter a home under the precise circumstances presented here, the Sixth Circuit has, and the Court finds the Sixth Circuit's rationale persuasive.

cases: *Bailey v. Swindell*, 940 F.3d 1295 (11th Cir. 2019) and *Moore v. Pederson*, 806 F.3d 1036 (11th Cir. 2015). Both *Bailey* and *Moore* involved unlawful entries into a home when the arrestee was present and there was no emergency. *See Bailey*, 940 F.3d at 1299 (finding a Fourth Amendment violation where an officer met with the plaintiff on his front porch to investigate an incident at his estranged wife's house, then when the suspect went back into his house the officer charged in after him and tackled him); *Moore*, 806 F.3d at 1045 (finding no exigent circumstances to justify the warrantless arrest of a person inside his apartment where nothing the officer saw "established or even suggested that anyone's life or health was at risk"). These cases do not clearly establish that Batastini and Collins would violate the Fourth Amendment if they entered Willis's home under the circumstances they faced. Insofar as Willis argues that a "broad statement of law" or egregious conduct by the officers clearly establishes a constitutional violation, the Court finds no support in precedent or the record for such claims as applied to this action. For all these reasons, the Court finds that Batastini and Collins are entitled to qualified immunity on Willis's claim arising from the warrantless entry into Willis's home.

*2. The Search of Willis's Home*

Willis argues that that even if the officers were justified in entering his home, they were not allowed to search it for drugs.

It is true that "an emergency-aid entry provides no basis to search the premises beyond what is reasonably needed to deal with the emergency while maintaining the officers' safety." *Case*, 607 U.S. at 117. But the "plain view doctrine allows police officers to seize any contraband in plain view if the officers have a right of access to the place where the contraband is located." *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006) (quoting *United States v. Rodgers,* 924 F.2d 219, 221 (11th Cir. 1991)). The "plain view" doctrine applies "where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *Smith*, 459 F.3d at 1290. As discussed above, the officers' entry did not violate clearly established law. The only remaining question is whether the drugs were in plain view.

Willis argues that the plain view doctrine does not apply here because Collins "moved a tray to retrieve the marijuana" and "collected containers whose contents he could not identify and guessed wrong about." Pl.'s Resp. to Defs.' Mot. Summ. J. 16, ECF No. 76. But Willis did not present evidence that Collins had to move a tray to *see* the marijuana, and he did not present any evidence to dispute Collins's on-site statement to Batastini and later sworn testimony that he saw the marijuana through a glass-top desk. Willis also did not present any evidence to dispute

that officers saw a white powder cut into lines on a desk—an indication that the powder is likely illicit drugs. Willis Dep. 32:25-33:1 (recalling that he saw "a substance on the desk on Collins's body camera footage"). The fact that the white powder was later determined to be methamphetamine (and not cocaine as Batastini originally suspected) does not mean that the powder's incriminating character was not immediately apparent. For all these reasons, the Court finds that Batastini and Collins are entitled to qualified immunity on Willis's unlawful search claim.

### *3. Willis's Arrest*

Willis's next § 1983 claim is for false arrest. To prove this claim, Willis must demonstrate that he was arrested without probable cause. *Black v. Wigington*, 811 F.3d 1259, 1268 (11th Cir. 2016). Willis does not dispute that marijuana was found in his house, but he "denie[s] knowledge" of the white powder existing in the house. Pl.'s Resp. Def.'s Mot. Summ. J. at 2. These contentions are insufficient to meaningfully dispute that the officers found these drugs in his home and that they reasonably believed Willis possessed them. Willis does claim that the exclusionary rule negates any probable cause for his arrest because the entry and search were unlawful. The Eleventh Circuit, though, has held that "[i]t does not matter whether that evidence was discovered in compliance with the Fourth Amendment because the exclusionary rule does not apply in a civil suit against police

officers." *Black*, 811 F.3d at 1269. Willis admits that "[t]he substance the officers identified by sight as cocaine was later identified . . . as methamphetamine"—an illegal drug. Pl.'s Resp. Def.'s Statement of Material Facts ¶ 15. Thus, Batastini and Collins had probable cause to arrest Willis, and they are entitled to summary judgment on his false arrest claim. For the same reason, Batastini and Collins are entitled to summary judgment on Willis's malicious prosecution claim.[4]

*4. Plaintiff's Fourteenth Amendment Claim*

Willis's next claim is that Batastini and Collins were deliberately indifferent to his serious medical needs because Batastini drove him to the jail even though Willis said he was hot and about to pass out and then, once the jail nurse instructed Batastini to take Willis to the hospital, put Willis back into the patrol car and drove him to the hospital instead of calling an ambulance. To establish a § 1983 deliberate indifference claim, a plaintiff must show the following: (1) a serious medical need; (2) the defendant's deliberate indifference to that risk; and (3)

[4] Defendants did not clearly argue for summary judgment on the malicious prosecution claim, but it fails because even if Batastini and Collins were responsible for seizing Willis pursuant to legal process, they had probable cause to do so. *See Williams v. Aguirre*, 965 F.3d 1147, 1159, 1165 (11th Cir. 2020) (noting "the absence of probable cause is undoubtedly a requirement for a claim of malicious prosecution" and that a malicious prosecution claim requires the plaintiff to show that an officer either applied for an arrest warrant despite knowing that the application failed to establish probable cause or intentionally or recklessly made misstatements necessary to support the warrant).

causation between that indifference and plaintiff's injury. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 1307. A serious medical need may also exist if "a delay in treating the need worsens the condition." *Id.* In either case, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.*

Willis admits that he did not see Collins after Collins left his home and returned to patrol, so there is no evidence that Collins observed a serious medical need and was deliberately indifferent to it. As for Batastini, Willis argues that Batastini should have known he had a serious medical need because he "collapsed," was "overheating" and had "difficulty breathing." Pl.'s Resp. Def.'s Mot. Summ. J. at 21. But the body camera footage shows Willis coherently responding to Officer Batastini's questions and arguing with him throughout the incident. *See, e.g.*, Batastini BWC 19:48-20:00, 33:37-33:44, 49:30-49:45, 50:25-50:41. Willis asked to "try one more time" on a blood pressure reading at the jail instead of being taken to the hospital. Batastini BWC at 51:03-51:09. And when Willis received treatment at the hospital, he presented with "no complaints" but had an elevated blood pressure and was diagnosed with "asymptomatic hypertension."

Piedmont Records 1-2, 4. Willis was prescribed a blood pressure medication and discharged "to home" the same day. *Id.* at 4. The Court is not convinced that a genuine factual dispute exists as to whether Willis had a serious medical need.

Even if Willis had established a serious medical need, he did not produce sufficient evidence to create a genuine factual dispute as to whether Batastini was deliberately indifferent to it or that he suffered an injury because of it. Although Batastini did not take Willis to the hospital immediately when Willis asked to go there, he did take Willis to the jail, where he was seen by a nurse. When the nurse was unable to take Willis's blood pressure and told Batastini to take Willis to the hospital for a medical evaluation, he did so. Finally, Willis pointed to no evidence that any delay in his medical treatment caused him any injury or worsened his condition. For all these reasons, he did not create a genuine fact dispute on his § 1983 medical claim, and Batastini and Collins are entitled to summary judgment.

## B. Claims Against Delonte Odom

In addition to his claims against Batastini and Collins, Willis asserts claims against Delonte Odom, a CPD sergeant who responded to the hospital when Willis asked for a CPD supervisor and who spoke with Willis for ten minutes. During that conversation, Odom listened to Willis's and Batastini's accounts of the incident. Odom told Willis that the officers had to conduct

a protective sweep of a building because an unknown E-911 call came from that location, and he opined that the officers did the right thing in this case.

Willis acknowledges that Odom was not personally involved in the warrantless entry, the search, or the arrest. He argues that Odom should be held individually liable because he did not train his officers to never enter a house with a closed screen door. But, as discussed above, Willis did not point to any authority clearly establishing that an officer would violate the Fourth Amendment by entering Willis's home under the circumstances presented here. Again, there is no dispute that the officers were dispatched to Willis's address after a 911 hang-up call and an unanswered return call, that they saw an open front door behind a tampered-with screen door, and they received no response when they announced their presence. For these reasons, Odom is entitled to qualified immunity on the § 1983 claim against him. Any Fourteenth Amendment claims alleged against Odom are likewise dismissed for the same reasons discussed above.

### C. Claims Against the Columbus Consolidated Government

Finally, Willis asserts § 1983 claims against the Columbus Consolidated Government ("CCG"). To succeed on a § 1983 claim against a municipality, "a plaintiff must show (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to

that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A municipal policy can be shown by an enacted ordinance or by a final decision on government policy rendered by an official empowered by state law to decide the issue. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-83 (1986). Where a plaintiff does not point to an official policy, he must establish that an alleged custom is "so widespread as to have the force of law." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). A single instance of a constitutional violation is generally insufficient to prove a policy or custom, and plaintiffs must point to other instances of similar violations to prevail. *Craig v. Floyd County*, 643 F.3d 1306, 1311 (11th Cir. 2011). In select circumstances, however, one violation alone can trigger municipal liability where the municipality's "deliberate indifference" to "the likelihood for constitutional violation is so high that the need for training would be obvious." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009).

Willis has failed to point to evidence of any policy or custom upon which his municipal liability § 1983 claim could rest. He relies upon contemporaneous statements made by Officer Odom and Officer Batastini after his arrest as establishing a policy of unconstitutional entry. Neither of these officers had the requisite authority to establish municipal policy, and Willis has

pointed to no official policy established by someone with such authority. Furthermore, Willis has produced no evidence of prior condoned instances of similar conduct by CPD that would support the existence of some custom. Even if CPD had a policy or custom that officers could enter homes under the circumstances presented here without a warrant, that policy caused no constitutional violation in this case as explained in the preceding discussion.

The Court also finds unpersuasive Willis's argument that the officers' conduct on this single occasion was sufficiently egregious that it demonstrates a deliberate indifference by CPD to avoid constitutional violations. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality" that amounts to deliberate indifference to the rights of persons with whom the municipality's employees come into contact "can a city be liable for such a failure under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). It is not obvious here that more training was needed to avoid constitutional violations. In fact, as previously explained, no constitutional violations even occurred here. Thus, the alleged lack of training led to no such violations. For these reasons, Defendants' motion for summary judgment on Count V against CCG is granted.

**III. Plaintiff's Summary Judgment Motion**

If Defendants are entitled to summary judgment as to all of Plaintiff's claims, then obviously Willis's motion for summary judgment must be denied.

CONCLUSION

Willis's motions for additional discovery (ECF Nos. 74 & 80) are DENIED. Willis's request for oral argument (ECF No. 80) regarding the discovery motions is likewise DENIED as moot. Defendant officers have qualified immunity on all claims asserted against them, and no basis exists for liability against CCG. Therefore, Defendants' motion for summary judgment (ECF No. 60) is granted as to all counts, and Willis's motion for summary judgment (ECF No. 64) is denied.

IT IS SO ORDERED, this 2nd day of October, 2026.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE